UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDDIE TATE,

        Plaintiff,

    v.

TRE SMITH, *et al.*,

        Defendants.

NO. C18-0141RSL

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 24. Plaintiff has asserted claims of assault, excessive force, false arrest, unlawful seizure, outrage, negligence, and discrimination arising from a traffic stop on January 31, 2016. Defendants seek summary dismissal of all of plaintiff's claims under Federal Rule of Civil Procedure 56.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, exhibits, and video/audio clips submitted by the parties, having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

Early in the morning on January 31, 2016, Monty Richardson called 911 and reported that he had been robbed at gunpoint and strangled to the point of unconsciousness. Richardson described the suspects as five African American males between 25 and 30 years of age. The Seattle Police Department ("SPD") responded to the area, but was unable to locate the suspects

or Richardson. Approximately three hours later, Richardson called 911 again to report that one of the people who had robbed him - the one who had pointed the gun at him and choked him - was parked in a mid-90s gold sedan with two white males. Richardson described the suspect as a black male in his mid-30s to mid-40s with facial hair, a ball cap, and a green jacket. SPD Officer Shaun Hilton heard about the assault and robbery when dispatch broadcast that the victim had spotted one of the suspects in a gold sedan in the Pioneer Square neighborhood: dispatch described the suspect as a black male about 35 years old in a green jacket. While Officer Hilton was en route, dispatch reported that the suspect's car had started moving and was driving eastbound on Washington from Occidental. A number of police vehicles converged on the area, and Officer Hilton encountered plaintiff's gold Lumina parked approximately 200 feet away from him, across a five point intersection. The sedan was approximately three blocks from where the victim had seen the suspect five minutes earlier. There were only a few vehicles on the road in the Pioneer Square area at 8:30 am on a Sunday morning, and the vehicle Officer Hilton spotted was faced in the direction that the suspect's car was last seen driving. Officer Hilton could see three people dressed in dark clothing near the car, but he was unable to determine whether there was anyone inside the vehicle.

Officer Hilton contacted dispatch, stating "there's a golden Lumina, currently stopped, at South Main . . . three occupants, do you think that might be it?" Dispatch responded with, "yeah, there was one black male and two white males." Meanwhile, the people near the car got into the sedan, and it started moving. Officer Hilton followed for a couple blocks (during which time other police vehicles arrived) before initiating a high-risk vehicle stop. Officer Hilton turned on

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

his lights at the intersection of 5th Avenue South and South Jackson Street, unholstered his gun,[1] and directed plaintiff to turn off the car, throw the keys out of the window, and exit the vehicle. Plaintiff is African American and was, at the time, 67 years old and wearing a black or navy jacket. He was compliant with Officer Hilton's directions. After confirming that other officers were on the scene, Officer Hilton turned plaintiff over to Officer Tre Smith for further processing while Officer Hilton dealt with the other people in the car. There were three of them, one male and two females.

Officer Smith directed plaintiff to continue backing toward him. As the distance between them closed, Officer Smith stepped from behind his car door and holstered his gun. Officer Smith placed his right hand in the middle of plaintiff's back and reached up to move plaintiff's left arm from up near his head to behind him. Plaintiff started to ask Officer Smith why he had been stopped, but when Officer Smith "went to open the cuffing channel by rotating the wrist so that the, the section between the wrist and the thumb is open so [he] can actually apply the handcuff," plaintiff reacted in pain and pulled away saying "Ow, wait a . . . I got a broken wrist. See that on there? God." Plaintiff was wearing a tan brace or compression sleeve on his left hand under his jacket. Officer Smith stopped attempting to handcuff plaintiff, instead directing him to

---

[1] It is unclear whether Officer Hilton kept his gun directed downward or had it pointed at plaintiff during this encounter. Video from Officer McEvilly's in-car camera shows that other officers at the scene were standing behind their car doors with their guns out and in front of them: whether the guns were pointed at plaintiff or in a "low-ready" position is impossible to tell. Plaintiff reports that there were three police SUVs with officers behind open car doors pointing their guns at him. Dkt. # 40-6 at 6. Officer Hilton denies pointing his gun at anyone during the incident, Dkt. # 54-1 at 17, and Officer Smith reports that he had his gun at "low ready, so not pointing it at someone, but down, pointed towards the ground" in front of the target, Dkt. # 54-1 at 28. Taking the evidence in the light most favorable to plaintiff, the Court assumes that the officers had their guns pointed at him and/or his vehicle.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4

place his left hand back on his head.

Shortly thereafter, Richardson appeared on the scene and indicated that none of the occupants of plaintiff's car was involved in the gunpoint robbery. Plaintiff was released after being detained for approximately fifteen minutes.

**DISCUSSION**

**A. CONSTITUTIONAL CLAIMS**

Plaintiff has asserted claims under the Fourth and Fourteenth Amendments of the United States Constitution. Section 1983 of the Civil Rights Act of 1964 provides the means to vindicate such claims. It creates a federal cause of action against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The statute does not create substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Conner*, 490 U.S. 386, 393 (1989). Plaintiff alleges that Officer Hilton did not have a reasonable suspicion of criminal activity that could warrant his detention on January 31, 2016, that the use of drawn and pointed guns during the stop was excessive, and that Officer Smith used excessive force when attempting to handcuff plaintiff. The facts, taken in the light most favorable to plaintiff, do not support these claims.

**1. Reasonable Suspicion**

"Arrests and detentions are both 'seizures' under the Fourth Amendment, but only the former requires a showing of probable cause, while the latter can be justified by reasonable suspicion of criminal activity." *U.S. v. Charley*, 396 F.3d 1074, 1079 (9th Cir. 2005) (citing *Brown v. Texas*, 443 U.S. 47, 51 (1999)). It is undisputed that the relatively brief encounter at

issue here is a so-called *Terry* stop, rather than an arrest. In order to justify an investigatory traffic stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, "an officer must have 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) (quoting *U.S. v. Lopez-Soto*, 205 F.2d 1101, 1105 (9th Cir. 2000)). Plaintiff argues that the only facts supporting the initiation of the traffic stop were plaintiff's race and the color of his car. This is simply not true. Not only did plaintiff's gold sedan match the description of the suspect's vehicle as provided by dispatch, but Officer Hilton encountered it minutes after Richardson lost sight of the vehicle, within blocks of its last known location, heading in the same direction as the suspect was headed, and similarly carrying multiple individuals. While Officer Hilton was unable to confirm how many individuals were in plaintiff's car or their race/gender composition, the relatively light traffic in the Pioneer Square neighborhood on a Sunday morning combined with all of the similarities between dispatch's report and what he was seeing gave rise to a reasonable suspicion of criminal activity that justified a brief investigatory stop.

Plaintiff further argues that the reasonable suspicion "standard takes into account 'the totality of the circumstances - the whole picture,'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417 (1981)), and lists particulars in which plaintiff was dissimilar to the suspect described by Richardson. Some of Richardson's descriptors were never conveyed by dispatch to the investigating officers, however, some were conveyed only in

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6

the initial broadcast, and others could not be confirmed prior to initiating the stop.[2] Given the totality of the circumstances known to the officer at the time, Officer Hilton was not acting on a mere hunch but rather had particularized, objective, and articulable bases to reasonably suspect that plaintiff had engaged in wrongdoing.

**2. Excessive Force**

"[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985) (emphasis in original). Determining the level of force that is permissible under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). Plaintiff argues that both the pointing of weapons and the attempt to handcuff plaintiff were excessive in the circumstances presented here. There is no factual basis for either argument. Dispatch informed the officers that Richardson had been robbed and assaulted at gunpoint and that the suspect they were pursuing was the one who had the gun. Plaintiff's police procedures expert acknowledges that when an officer believes that the person being stopped poses a threat, the encounter will involve "at least the display of weapons, if not pointing the weapons," Dkt. # 25-1 at 19, and that attempting to handcuff plaintiff in these circumstances was

---

[2] Plaintiff's police procedure expert acknowledged that plaintiff's age and clothing would have become apparent only after he exited the vehicle. Dkt. # 25-1 at 36.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

not an excessive use of force, Dkt. # 25-1 at 39. No reasonable jury could find that the force used in this situation was excessive.

Plaintiff also argues that Officer Smith used excessive force when attempting to handcuff plaintiff. Neither plaintiff nor his police procedure expert suggest that it is unreasonable to apply handcuffs when conducting a high-risk vehicle stop. Nor does plaintiff argue that Officer Smith failed to follow normal procedure when attempting to handcuff plaintiff. Rather, plaintiff suggests that Officer Smith should have recognized that plaintiff was wearing a brace or compression sleeve on his left wrist and questioned him about it before attempting to apply the handcuffs. There is no evidence that Officer Smith was, in fact, aware of the brace or of the nature of plaintiff's pre-existing injury prior to rotating plaintiff's wrist. The video evidence shows that he moved plaintiff's arm backwards by touching his coat sleeve, and plaintiff did not mention the prior injury at the time. Plaintiff's police procedure expert acknowledges that any injury to plaintiff's wrist was accidental, but posits that the injury could have been avoided had Officer Smith paid closer attention and inquired before attempting to apply handcuffs. Dkt. # 25-1 at 39. Even if one were to assume that Officer Smith had been negligent, mere negligence does not give rise to constitutional liability. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

**3. Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As noted above, plaintiff has not shown any violation of his constitutional rights. Nor has he shown a violation of a right that was clearly established at the time of the incident.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

"Clearly established" must not be defined "at a high level of generality," but rather it "must be particularized to the facts of the case." *White v. Pauly*, __ U.S. __, 137 S.Ct. 548, 552 (2017) (citations omitted). In this case, plaintiff is essentially arguing that Officer Hilton should have sought additional information regarding the suspect before determining that a *Terry* stop was justified, that both officers should have realized that drawing and pointing weapons was excessive because plaintiff was not the person they were looking for, and that Officer Smith should have been more observant before attempting to apply handcuffs. Plaintiff has not identified any case law where officers acting in similar circumstances were held to have violated the Fourth Amendment. Whether an officer had a reasonable suspicion of criminal activity (and therefore justification for a high-risk traffic stop) is determined on the information the officer had, not the universe of information he or she might have obtained through additional investigation. Nor has plaintiff identified a case in which the drawing/pointing of weapons was deemed excessive despite the officer's reasonable suspicion that plaintiff had committed an armed felony. Finally, the governing case law clearly does not support the imposition of constitutional liability for mere negligence, like the alleged failure to notice and/or inquire about a wrist brace. Because reasonable persons in defendants' positions could have believed that their conduct in this case was lawful, Officers Hilton and Smith are entitled to qualified immunity.

**B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OUTRAGE)**

Plaintiff's outrage claim is based on the incorrect assertion that Officer Hilton initiated the traffic stop based on nothing more than plaintiff's race and the color of his car. Given that Officer Hilton had specific, objective, and articulable reasons for suspecting that plaintiff had engaged in an armed robbery and assault, his decision to initiate a high-risk stop was not

outrageous.

**C. NEGLIGENCE**

To succeed on a negligence claim in Washington, plaintiff must establish (1) that defendants owed him a duty (2) that they breached (3) resulting in injury (4) proximately caused by the breach. *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243 (2001). "At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others. . . . This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550 (2019). Plaintiff argues that Officers Hilton and Smith were negligent when they drew their guns and pointed them at plaintiff and that Officer Smith was negligent in failing to see the compression sleeve on his left hand and understanding (or inquiring about) its import. For the reasons discussed above, the Court finds that, given the nature of the underlying criminal conduct reported by Richardson, concerns regarding officer and public safety, and the other circumstances surrounding the stop, the show of force inherent in the drawing and pointing of guns was reasonable.

With regards to Officer Smith's failure to exercise reasonable care with regards to plaintiff's wrist injury, plaintiff offers only his ipse dixit that a reasonable person would have seen that he was wearing a compression sleeve under his jacket, would have known that plaintiff had a pre-existing injury to his wrist, and would have realized that the act of rotating plaintiff's wrist to apply handcuffs would cause injury. Plaintiff is not asserting that Officer Smith was actually aware of the brace or his pre-existing injury, nor is he asserting that Officer Smith's handcuffing method was in any way extraordinary. Plaintiff does not attempt to explain when

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

during the encounter Officer Smith should have seen the brace: review of the in-car videos suggests that, for most of the encounter, plaintiff's left hand was shielded from Officer Smith's view and the brace was generally hidden by his coat sleeve. Nor is there any indication that plaintiff attempted to alert Officer Smith to the brace or his injury as he moved his left arm from up in the air to behind his back. Nothing about the encounter as described by the parties or depicted in the videos suggests that Officer Smith acted unreasonably. Plaintiff's negligence claim is, essentially, based on nothing more than the fact that his prior wrist injury was exacerbated by Officer Smith's justified and ordinary attempt to handcuff him. Having failed to produce evidence that Officer Smith's conduct was unreasonable, the negligence claim fails as a matter of law.

**D. ASSAULT**

Plaintiff's argument regarding his assault claim incorporates the excessive force analysis. Because the excessive force claim fails as a matter of law, so to does the assault claim.

**E. WASHINGTON LAW AGAINST DISCRIMINATION, RCW 49.60.030**

Plaintiff argues that defendants discriminated against him because of his race or color by depriving him of "the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030(1)(b). Plaintiff's theory seems to be that if he had been a white man driving a gold sedan, Officer Hilton would not have initiated a traffic stop: thus, plaintiff argues, defendants treated him differently because of his race.

Defendants argue that a public street is not a "place of public resort, accommodation, assemblage, or amusement," but in doing so focus solely on the "public accommodation" portion

of the statute. It can hardly be doubted that if a neighborhood banded together and limited access to its streets to individuals of only one race or religion, those excluded from the full enjoyment of the advantages and facility of those streets could bring a discrimination claim under the WLAD. The Court finds more troubling plaintiff's assumption that an arrest is the type of "accommodation, advantage, facility, or privilege" that a citizen "enjoys" and from which he or she cannot be excluded based on a protected characteristic. *See Patrice v. Murphy*, 43 F. Supp.2d 1156, 1160 (W.D. Wash. 1999) (finding that an arrest is not the type of service, program, or activity from which one could be excluded for purposes of the Americans with Disabilities Act).

More importantly, the Court disagrees with plaintiff's assumption that he was stopped because of his race (or, as could be argued,[3] his gender). Plaintiff was stopped because he and his car and his passengers resembled the physical description a victim had provided of his assailant and his companions. The description did not originate with defendants, nor was race the sole characteristic for which defendants were looking. *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2nd Cir. 2000) (a police department practice of interviewing victims, getting a description of the assailant, and seeking out persons who match that description is race-neutral); *U.S. v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000) ("Common sense dictates that, when determining whom to approach as a suspect of criminal wrongdoing, a police officer may legitimately consider race as a factor if descriptions of the perpetrator known to the officer include race."). The Court declines to adopt any interpretation of the WLAD that would bar police officers from acting upon witness descriptions of the suspect merely because the

---

[3] It is undisputed that dispatch told the officers that they were looking for an African-American male, so if plaintiff had been a woman he also would not have been stopped. Thus, if plaintiff's argument holds, defendants also treated him differently because of his sex.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

description touches on a protected characteristic.

**CONCLUSION**

For all of the foregoing reasons, defendants' motion for summary judgment, Dkt. # 24, is GRANTED.[4] The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

Dated this 28th day of February, 2020.

*MWS Lasnik*
Robert S. Lasnik
United States District Judge

---

[4] Because the Court need not reach the issue of damages, defendants' "Motion to Exclude the Opinion of Plaintiff's Medical Expert Witness," Dkt. # 28, is DENIED as moot.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13